IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

TIFFANIE HUPP, et al.,

          Plaintiffs,

v.                                         CIVIL ACTION NO. 2:17-cv-00926

STATE TROOPER SETH COOK, et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Defendants' Motion to Dismiss, (ECF No. 8), and Plaintiffs' Motion to Amend, (ECF No. 22). The Motion to Amend is **GRANTED** and the First Amended Complaint will be filed as the operative pleading in this matter. With the consent of the parties, the Court treats the Motion to Dismiss as challenging the sufficiency of the First Amended Complaint. For the reasons set forth below, the Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

*I.    BACKGROUND*

The following facts are drawn from the First Amended Complaint.[1] For purposes of the Motion to Dismiss, they will be regarded as true.

---

[1] Defendants' directed their Motion to Dismiss to Plaintiff's original Complaint. After the filing of the Motion to Dismiss and well in advance of the deadline for amending the pleadings, Plaintiffs moved for leave to amend. Plaintiffs' First Amended Complaint makes minor alterations to more accurately reflect Trooper Cook's testimony at Plaintiff Tiffanie Hupp's criminal trial. Defendants do not oppose the Motion to Amend and Plaintiffs consent to have the Court treat the Motion to Dismiss as applying to the First Amended Complaint. Mindful of the policy favoring liberal amendment of pleadings, Fed. R. Civ. P.

On May 9, 2015, Cliff Myers contacted the West Virginia State Police (State Police) from his home in Waverly, West Virginia to report an altercation with a neighbor. Troopers Seth Cook and S.S. Michael responded to the call.[2] After conversing with the neighbors and confirming their quarrel had subsided, Trooper Cook entered Myers' front yard and began walking toward the residence. Myers' stepdaughter Tiffanie Hupp and her son, three-year-old Riley Hupp, were playing in the front yard. Myer's dog was also in the yard, restrained by a length of chain. The dog began to bark at Trooper Cook's approach. Though the dog had reached the end of its chain and could not approach within two feet of the officer, Trooper Cook suddenly drew his firearm and pointed the weapon at the dog's head. He yelled to Tiffanie Hupp to control the animal. Hupp ran toward the dog, exclaiming, "Don't do that!" and placed her body between dog and officer. Hupp alleges that Trooper Cook grabbed her, threw her to the ground, and placed her under arrest. Hupp's young son witnessed the entire episode. Trooper Cook then entered the Myers residence and confiscated four electronic devices that had been used to record the conflict. Hupp's husband Ryan, for example, recorded the incident on his cellular phone. The State Police retained possession of this and the three other devices for over one month before returning them.

West Virginia prosecutors charged Tiffanie Hupp with obstructing an officer, a misdemeanor offense. On February 29, 2016, the case was tried to a jury in the magistrate court of Wood County, West Virginia. Trooper Cook testified at the trial that he had felt threatened by a crossbow observed at the Myers residence. He confirmed Hupp's contention that she had used her body as a shield to protect the dog, but claimed that he placed Hupp under arrest only after she

---

15(a)(2), the Court **GRANTS** the Motion to Amend. (ECF No. 22.)
[2] Trooper S.S. Michael has not been named as a Defendant.

threatened or attempted to grab him. At the conclusion of testimony, the jury returned a verdict of acquittal within an hour.

On January 25, 2017, Plaintiffs Cliff Myers, Tiffanie Hupp, and Riley Hupp filed suit in this Court against Trooper Cook, Colonel C.R. "Jay" Smithers, and the State Police. The First Amended Complaint consists of eleven counts,[3] with the central claims arising under 42 U.S.C. § 1983. The claims are summarized as follows:

> Count I: Unlawful arrest in violation of the Fourth and Fourteenth Amendments (Tiffanie Hupp against Trooper Cook in his individual capacity);
>
> Count II: Excessive force in violation of the Fourth and Fourteenth Amendments (Tiffanie Hupp against Trooper Cook in his individual capacity);
>
> Count III: Malicious prosecution in violation of the Fourth and Fourteenth Amendments (Tiffanie Hupp against Trooper Cook in his individual capacity);
>
> Count IV: State tort claim for malicious prosecution (Tiffanie Hupp against the WVSP and Trooper Cook in his individual and official capacities);
>
> Count V: Deliberate indifference and supervisory liability in violation of the Fourth and Fourteenth Amendments (Tiffanie Hupp against Colonel Smithers in his individual capacity);
>
> Count VI: State tort claim for negligent training, supervision, and retention (Tiffanie Hupp against the State Police and Colonel Smithers in his individual and official capacities);
>
> Count VII: Intentional infliction of emotional distress (Tiffanie and Riley Hupp against the State Police and Trooper Cook in his individual and official capacities);
>
> Count VIII: Battery (Tiffanie Hupp against Trooper Cook in his individual and official capacities);
>
> Count IX: Unlawful search in violation of the Fourth and Fourteenth Amendments (Clifford Myers against Trooper Cook in his individual capacity),

---

[3] The Complaint originally contained a claim for slander against Trooper Cook. (Compl. Count IX.) Plaintiffs abandoned this claim in the First Amended Complaint and the Court need not address Defendants' arguments as they related to this claim.

> Count X: Unlawful seizure in violation of the Fourth and Fourteenth Amendments (Clifford Myers against Trooper Cook in his individual capacity), and
>
> Count XI: Unlawful seizure in violation of the Fourth and Fourteenth Amendments (Clifford Myers against Trooper Cook in his individual capacity).

Plaintiffs invoke the Court's federal question jurisdiction over the § 1983 claims alleged in Counts I through III, V, and IX through XI. They ask the Court to exercise supplemental jurisdiction over the remaining state-law based claims.

Defendants moved for partial dismissal on April 11, 2017. Having been fully briefed, the motion is ready for disposition.

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint. Fed. R. Civ. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that "the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. DISCUSSION

*A. Sovereign Immunity*

Defendants move to dismiss all state-law tort claims against the State Police and Trooper Cook and Colonel Smithers in their official capacities, arguing these claims are barred by Eleventh Amendment immunity.

The Eleventh Amendment traditionally "bars citizens from bringing suits in federal court against their own states." *Bragg v. W. Va. Coal Ass'n*, 248 F.3d 275, 291 (4th Cir. 2001). Further, "[s]tate officials sued in their official capacities for retrospective money damages have the same sovereign immunity accorded to the State." *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 549 (4th Cir. 2014) (citations omitted). Here, Counts IV, VI, VII, and VIII allege state tort claims for monetary damages against the State Police and its officers in their official capacities. Plaintiffs admit that the state agencies and their officers are typically entitled to Eleventh Amendment protection in these circumstances. The issue is whether the State Police waived that protection in this case.[4]

Eleventh Amendment immunity is waived where a State, having consented to suit for state law claims in state court, removes a state lawsuit to federal court. *Lapides v. Bd. of Regents*, 535 U.S. 613 (2002); *see also Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985) ("[I]f a State waives its immunity and consents to suit in federal court, the Eleventh Amendment does not bar the action."). *Lapides* recognized the need to avoid the "inconsistency, anomaly, and unfairness" that results where a state defendant who has invoked federal jurisdiction is

---

[4] Although there are other exceptions to Eleventh Amendment immunity, none are applicable here. *See Dellmuth v. Muth*, 491 U.S. 223, 227 (1989) (recognizing Congress may abrogate the States' Eleventh Amendment immunity by clearly specifying its intention by statute); Ex *Parte Young*, 209 U.S. 123 (1908) (finding the Eleventh Amendment does not preclude suits against state officers for injunctive relief)

subsequently permitted to challenge that jurisdiction. 535 U.S. at 621–22. *Lapides* has no application in this case because Defendants did not remove the instant suit from state to federal court. Plaintiffs sought the federal forum of their own accord. Still, Plaintiffs contend that because the State Police often seeks removal of cases from state to federal court, "it cannot now be heard to complain when a plaintiff chooses to save the time and trouble of removal and just start the case there." (Pls.' Resp. to Mtn. to Dismiss at 5.) The gist of Plaintiffs' argument is that once a State voluntarily removes a case to federal court, it forfeits Eleventh Amendment immunity not only as to that case but also as to all other cases going forward.

Plaintiffs' argument, though inventive, lacks merit. A State waives immunity under the Eleventh Amendment on a case-by-case basis. *See Katz v. Regents of the Univ. of Cal.*, 229 F.3d 831, 834 (9th Cir. 2000). Where, as here, "a State's federal-court participation is involuntary," *Lapides*, 535 U.S. at 622, the State retains the full protection of the Eleventh Amendment. Stretching the holding in *Lapides* in the manner suggested by Plaintiffs—that is, to find waiver whenever a State that has previously removed a case to federal court is later sued in the federal forum—would eviscerate the Eleventh Amendment's protections entirely. Sovereign immunity therefore bars Plaintiffs' state tort claims against the State Police as well as their claims against Trooper Cook and Colonel Smithers in their official capacities. Counts IV, VI, and VII against the State Police are dismissed. Counts IV, VI, VII, VIII are dismissed to the extent they seek monetary damages from Trooper Cook or Colonel Smithers in their official capacities.

  B. *Qualified Immunity for Negligent Training, Supervision, and Retention Claim*

Count VI alleges negligent training, supervision, and retention against the State Police and Colonel Smithers in his individual and official capacities. Only the claim against Colonel

Smithers in his individual capacity has survived the Eleventh Amendment challenge, and the Court limits the following discussion accordingly. Defendants seek dismissal of this negligence claim on grounds that state law immunizes public officers who commit negligence while performing discretionary functions. Plaintiffs respond that immunity is no obstacle to recovery because Tiffanie Hupp only seeks damages up to the limits of the applicable liability insurance policy.

The parties' arguments implicate two distinct types of immunity available, at least potentially, to State agencies and their employees. Plaintiffs' arguments relate exclusively to *sovereign* immunity, not qualified immunity. The State of West Virginia and its employees enjoy a grant of sovereign immunity from Section 35, Article VI of the West Virginia Constitution, which provides that "[t]he State of West Virginia shall never be made a defendant in any court of law or equity." The Supreme Court of Appeals of West Virginia recognized an exception where a state agency has acquired liability insurance with legislative authorization and the plaintiff suing the agency seeks recovery only "under and up to the limits" of the available insurance coverage. Syl. Pt. 2, *Pittsburgh Elevator Co. v. W. Va. Bd. of Regents*, 310 S.E.2d 675 (W. Va. 1983). Colonel Smithers cannot invoke sovereign immunity when sued in his individual capacity, however, and Plaintiffs' arguments are therefore irrelevant.

"Qualified immunity is 'a different kind of limited immunity to the State and its law enforcement officer for discretionary acts negligently committed within the scope of his employment.'" *Hess v. W. Va. Dep't of Corr.*, 705 S.E.2d 125, 128 (W. Va. 2010) (quoting *Clark v. Dunn*, 465 S.E.2d 374, 379 (W. Va. 1995)). In syllabus point six of *Clark*, the Supreme Court of Appeals held:

> In the absence of an insurance contract waiving the defense, the doctrine of qualified or official immunity bars a claim of mere negligence against a State

7

agency not within the purview of the West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va. Code § 29–12A–1, *et seq.*, and against an officer of that department acting within the scope of his or her employment, with respect to the discretionary judgments, decisions, and actions of the officer.

465 S.E.2d at 376. Based on *Clark*, the first question in determining whether qualified immunity applies is "whether the relevant insurance policy waives the defense of qualified immunity." *Hess*, 705 S.E.2d at 130 (citation omitted). The Court concludes that it does not. The State Police has provided its Certificate of Liability Insurance for the period during which the subject events are alleged to have occurred.[5] The Certificate expressly provides that "the additional insured [the State Police] does not waive any statutory or common law immunity conferred upon it." (Defs.' Reply to Mot. to Dismiss Ex. B.); *see Lavender v. W. Va. Reg'l Jail and Corr. Facility Auth.*, Civil Action No. 3:06-1032, 2008 WL 313957, at *9 (S.D. W. Va. Feb. 4, 2008) (reviewing identical liability insurance policy to conclude that there was no waiver of statutory or common law immunity).

The Court also notes that the State Police is not subject to the West Virginia Governmental Tort Claims and Insurance Reform Act (the Act). The Act makes political subdivisions statutorily liable for damages "caused by the negligent performance of acts by their employees while acting within the scope of employment." W. Va. Code § 29-12A-4(b)(1); *see* § 29-12A-3 (defining "political subdivision"). The State Police is a state agency, not a political subdivision. *See Jarvis*

---

[5] The Court may consider documents attached to a motion to dismiss so long as they are "integral to and explicitly relied on in the complaint and . . . the plaintiffs do not challenge [their] authenticity." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (citation omitted). This rule "prevent[s] parties from surviving a motion to dismiss by artful pleading or by failing to attach relevant documents." *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (citation omitted). The State Police's insurance policy, including the Certificate of Liability Insurance, is both integral to and explicitly relied on in the First Amended Complaint. As Plaintiffs do not challenge the authenticity of these documents, the Court finds it proper to consider them in ruling on the Motion to Dismiss.

*v. W. Va. State Police*, 711 S.E.2d 542, 551–52 (W. Va. 2010) ("[T]he West Virginia State Police is a State Agency that is not within the purview of the [Act], and . . . the individual State Troopers in this case are officers of that State agency.").

Given the lack of waiver in the governing insurance contract, the next question is whether employee training, supervision, and retention, as broadly alleged by Plaintiffs, qualify as discretionary governmental functions. Clearly, the answer is yes. The Supreme Court of Appeals has held that "the broad categories of training, supervision, and employee retention . . . easily fall within the category of 'discretionary' governmental functions." *W. Va. Reg'l Jail and Corr. Facility Auth. v. A.B.*, 766 S.E.2d 751, 773 (W. Va. 2014); *see also Cochran v. W. Va. Reg'l Jail and Corr. Facility Auth.*, Civil Action No. 3:13-10176, 2014 WL 2973486, at *7 (S.D.W. Va. July 2, 2014) (supervision, training, and retention of employees involve discretionary duties).

Having found the judgments, decisions, and actions giving rise to Count VI are discretionary in nature, the Court must determine whether Plaintiff has alleged that Colonel Smithers violated a clearly established statutory or constitutional right with respect to his training, supervision, or retention of Trooper Cook. *A.B.*, 766 S.E.2d at 774 (reasoning that even if the complained-of actions are discretionary in nature, an agency is not immune if the actions violate "clearly established laws of which a reasonable official would have known") (quoting *Payne*). Plaintiffs neglect to allege how Colonel Smithers carried out his training, supervision, and retention duties in a manner that conflicted with clearly established statutory or constitutional rights or laws of which a reasonable person would have known. Nor do they identify any such clearly established rights in their Response.

Thus, the Court finds that Colonel Smithers is entitled to qualified immunity over the negligent training, supervision, and retention claim alleged in Count VI. Count VI is **DISMISSED**.

  *iii.*  *Motion to Dismiss § 1983 Claims Relying on the Fourteenth Amendment*

Lastly, Defendants seek dismissal of all § 1983 claims to the extent those claims rely on the Fourteenth Amendment as a source of substantive rights. As this Court has observed, "the Court may not entertain a due process claim where [a plaintiff] allege[s] a Fourth Amendment claim arising from the same abusive government conduct." *Spry v. West Virginia*, No. 2:16-cv-01785, 2017 WL 440733, at *6 (S.D. W. Va. Feb. 1, 2017) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)). Plaintiffs clarify in response that except for Count III, they cite the Fourteenth Amendment merely as the means to enforce the Fourth Amendment against the states.

Count III alleges a § 1983 action for malicious prosecution in violation of the Fourth and Fourteenth Amendments. Plaintiffs claim that a distinct malicious prosecution claim lies under the Fourteenth Amendment where the prosecution has suborned perjured testimony or manufactured evidence at trial. In *Castellano v. Fragozo*, the lone case cited by Plaintiffs, the Fifth Circuit held that "a state's manufacturing of evidence and knowing use of that evidence along with perjured testimony to obtain a wrongful conviction deprives a defendant of his long recognized right to a fair trial secured by the Due Process Clause." 352 F.3d 939, 942 (5th Cir. 2003).

While the Fifth Circuit recognizes a constitutional claim for malicious prosecution under the Fourteenth Amendment, the Fourth Circuit does not. After noted the "embarrassing diversity of judicial opinion" on the subject, the Fourth Circuit held in *Lambert v. Williams* that a malicious

prosecution claim under § 1983 is properly understood as a claim for unreasonable seizure that arises exclusively under the Fourth Amendment, not the Fourteenth. 223 F.3d 257, 262 (4th Cir. 2000). The court held:

> Our . . . precedent[] makes clear that there is no such thing as a §1983 malicious prosecution claim. What we termed a 'malicious prosecution' claim in *Brooks* is simply a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution—specifically, the requirement that the prior proceeding terminate favorably to the plaintiff. It is not an independent cause of action.

*Id.* (citing *Brooks v. City of Winston-Salem*, 85 F.3d 178 (4th Cir. 1996)); *see also Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) ("A malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort.") (internal citations and quotations omitted).

This Court has historically followed *Lambert*'s guidance. *Brodnik v. Lanham*, No. CV 1:11-0178, 2016 WL 4087361, at *7 (S.D. W. Va. Aug. 1, 2016) ("[T]o the extent that plaintiff's complaint alleges a constitutional malicious prosecution claim under the . . . Fourteenth Amendment[], [that] claim[] [is] dismissed."); *Tofi v. Napier*, No. 2:10-cv-01121, 2011 WL 3862118, at *3–4 (S.D. W. Va. Aug. 31, 2011) (applying *Lambert*). The Court will continue to do so here. Fifth Circuit precedent does not bind this Court, and its persuasive value is negligible where Fourth Circuit law speaks to the contrary. Accordingly, the Fourteenth Amendment "malicious prosecution" claim alleged in Count III fails to state a claim upon which relief can be granted. In that respect, the Court **GRANTS** the Motion to Dismiss Count III. Because the remaining § 1983 claims do not allege substantive violations of the Fourteenth Amendment, the Motion to Dismiss Counts I, II, V, IX, X, and XI is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, the Motion to Amend is **GRANTED**. (ECF No. 22.) The Court **ORDERS** that the First Amended Complaint, (ECF No. 22-1), be **FILED** as the operative pleading in this matter. The Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. (ECF No. 8.) Counts IV, VI, VII, and VIII of the First Amended Complaint are **DISMISSED** to the extent brought against the State Police and its officers in their official capacities. Count VI is further **DISMISSED** *en toto*. The Fourteenth Amendment "malicious prosecution" claim alleged in Count III is also **DISMISSED**. As a natural consequence of these findings, the Court **ORDERS** that the State Police be removed as a party to this action.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: August 7, 2017

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE