**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**

| | |
|---|---|
| TIFFANIE HUPP and RILEY HUPP, a minor, by And through his next friend, Tiffanie Hupp, and CLIFFORD MYERS, | Case No: 2:17-CV-926 |
| Plaintiffs, | JURY TRIAL REQUESTED |
| v. | |
| STATE TROOPER SETH COOK, COLONEL C.R. "JAY" SMITHERS, and WEST VIRGINIA STATE POLICE, | |
| Defendants. | |

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

COME NOW Plaintiffs Tiffanie Hupp, Riley Hupp and Cliff Myers, by and through

their attorneys, and for their claims of violation of their constitutional rights and violations

of West Virginia law, allege as follows:

**INTRODUCTION**

1. In May 2015, a West Virginia police officer abandoned his duty to serve and protect

   when, without any provocation or probable cause, he attempted to shoot a beloved

   dog in front of a small child, then tackled and arrested the family member who

   stepped in between the officer's loaded weapon and the chained up dog.  The

   officer's actions traumatized a three-year old boy, who was forced to watch his

   mother be assaulted and humiliated.  After the unprovoked attack, the officer

   entered the family's home without consent or a warrant and confiscated all recording

devices.  This is a civil rights action raising federal and state law claims on behalf of the mother who was arrested and maliciously prosecuted and the young child who has suffered considerable psychological suffering.

2. Specifically, this is an action brought by Tiffanie Hupp and Riley Hupp (a minor), by and through his next friend Tiffanie Hupp, and Cliff Myers, to vindicate deprivations of their federal constitutional rights and violations of West Virginia law.

## VENUE AND JURISDICTION

3. This action arises under the Constitution and laws of the United States, including the Fourth and Fourteenth Amendments of the United States Constitution and is brought pursuant to 42 U.S.C. §§ 1983 and 42 U.S.C. § 1988. The Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343, and on the supplemental jurisdiction of this Court to entertain related claims arising under state law pursuant to 28 U.S.C. § 1367(a).

4. This case is instituted in the United States District Court for the Southern District of West Virginia pursuant to 28 U.S.C. § 1391 as the judicial district in which all relevant events occurred and in which Defendants maintain offices and/or reside.

## PARTIES

5. At all times relevant hereto, Plaintiff Tiffanie Hupp was a resident of the State of West Virginia and a citizen of the United States of America.

6. At all times relevant hereto, Plaintiff Riley Hupp, a minor, was a resident of the State of West Virginia and citizen of the United States of America. He pursues his claims by his next friend, and mother, Tiffanie Hupp.

7. At all times relevant hereto, Plaintiff Cliff Myers was a resident of the State of West Virginia and citizen of the United States.

8. At all time relevant hereto, Defendant Seth Cook was a citizen of the United States and a resident of the State of West Virginia and was acting under the color of state law in his capacity as a law enforcement officer employed by the Defendant city and/or the West Virginia State Police Parkersburg Detachment. This action is brought against Defendant Cook in his individual capacity and his official capacity.

9. At all time relevant hereto, Defendant Colonel C.R. "Jay" Smithers was appointed Superintendent of the West Virginia State Police, and was at all times relevant hereto acting under the color of the law. The action is brought against Defendant Smithers in his official and individual capacity for state law claims and his individual capacity for federal claims.

10. Defendant West Virginia State Police is an insured state agency with its headquarters and primary place of business located in Kanawha County, West Virginia.

11. This action is being brought against the West Virginia State Police only to seek damages up to the policy limits of the insurance policy or policies issued to the West Virginia State Police. The claims will not cost West Virginia taxpayers and are therefore not subject to immunity. *Pittsburgh Elevator v. West Virginia Board of Regents*, 172 W.Va. 743, 310 S.E.2d 675 (1983).

12. Upon information and belief, West Virginia has a policy that covers it and its agents up to $1 million for the wrongful acts, excessive force, and other acts alleged herein.

**ALLEGATIONS COMMON TO ALL COUNTS**

13. On or about May 9, 2015, Cliff Myers, stepfather of Tiffanie Hupp, contacted the West Virginia State Police.

3

14. Mr. Myers reported a civil disturbance with his neighbor in the form of a verbal argument.

15. Defendant Cook and his partner, Trooper S.S. Michael, arrived at Myers's home at 2395 Carpenter Run Road.

16. After speaking with both parties, Defendant Cook determined there was no basis for an arrest or probable cause to charge any of the persons present.

17. Instead of leaving the scene, Defendant Cook walked towards the home of Mr. Myers.

18. In the front yard of Mr. Myers's residence Plaintiff Tiffanie Hupp was playing with her three year old son, Riley Hupp.

19. As Defendant Cook walked towards the house, Mr. Myers' dog, named Buddy, barked at him.

20. Buddy was securely tied up.

21. Buddy could not reach Defendant Cook because he was tied up.

22. At no point was Buddy within two feet of Defendant Cook.

23. Officer Cook drew his weapon.

24. Defendant Cook pointed the loaded weapon at Buddy's head.

25. Officer Cook put his finger on the trigger of the gun and was prepared to shoot Buddy.

26. Defendant Cook said "Control your dog now."

27. Buddy posed no threat of even minimal injury to Officer Cook.

28. Buddy remained on his leash and could not reach Defendant Cook.

29. As directed, Ms. Hupp ran towards the dog while saying "Don't do that."

30. Ms. Hupp placed herself between Defendant Cook and Buddy.

31. Ms. Hupp risked her life by stepping between Trooper Cook and Buddy.

32. Ms. Hupp reasonably feared for Buddy's life.

33. Ms. Hupp also feared the long-term psychological harm to her three-year-old son if a police officer shot the dog while the boy stood less than ten feet away.

34. Although Ms. Hupp may well have saved the dog's life, she was not entirely able to spare her son from trauma.

35. Defendant Cook grabbed Ms. Hupp, threw her to the ground, pushed her against the police car, and ultimately arrested her.

36. Defendant Cook's behavior damaged Riley Hupp, turning a young boy who wanted to talk to police officers into one who is afraid of them.

37. The video of the events shows Riley sobbing as his mother is assaulted and taken away by police.

38. Riley Hupp is now extremely afraid of police officers and traumatized by the events of that day.

39. Riley Hupp has nightmares and general anxiety about interactions with police officers.

40. Riley Hupp lives in daily fear of police officers and it impacts his life. For example, when he sees a police officer in public he becomes extremely nervous, sad, and upset.

41. Ms. Hupp would like to have her son treated by a mental health professional to address his stress and anxiety stemming from the traumatic assault of his mother. To date the family has not been able to afford such care.

42. Although Ms. Hupp continues to try to teach him that the vast majority of police officers are good people, he remains afraid.

43. After threatening and attempting to kill a dog, traumatizing a boy, and arresting a mother all without probable cause, Defendant Cook still did not leave the private property of Mr. Myers.

44. Defendant Cook, without warrant or probable cause, entered the home of Mr. Myers.

45. Mr. Myers did not voluntarily consent to Defendant Cook entering his home.

46. Defendant Cook, without warrant, probable cause, or prior consent, seized four electronic devices from within the home.

47. Mr. Myers' phone was one of the items seized from the home. Mr. Myers did not voluntarily consent to the seizure of his phone, nor was there any legal justification for Defendant Cook to be in the house, much less to be seizing personal property.

48. Defendant Cook was aware that his conduct, in pointing his gun at a dog and arresting Hupp, was video-recorded.

49. Defendant Cook confiscated the recording and photography devices used to record him. This was done in an effort to cover-up Defendant Cook's illegal behavior and is evidence he knew his behavior was unlawful, as any reasonable officer would.

50. Ryan Hupp, Ms. Hupp's husband, witnessed the entire event. He recorded it from Mr. Myers' home.

51. Ryan Hupp's recording device was seized.

52. The police retained possession of the recording devices for more than a month.

53. Recordings revealed that Ms. Hupp was unarmed and non-confrontational.

54. Despite this, the Wood County Prosecutor's office chose to prosecute Ms. Hupp for obstructing Defendant Cook.

55. Despite the complete absence of probable cause, Ms. Hupp was charged with misdemeanor obstruction in Wood County Magistrate Court.

56. Ms. Hupp pled not guilty.

57. The case went to trial on February 29, 2016.

58. At trial, Defendant Cook falsely told the jury that there was a crossbow at the scene that made him feel threatened.

59. Defendant Cook testified that Ms. Hupp was positioned between Defendant and Buddy.

60. Defendant Cook falsely testified that Ms. Hupp threatened the officer or otherwise obstructed him, and that this is why he threw her on the ground and arrested her.

61. Defendant Cook falsely testified that Hupp grabbed him or attempted to grab him.

62. Defendant Cook failed to inform the jury that he asked Ms. Hupp to restrain Buddy, instead testifying that she was obstructing him by trying to step between him and Buddy.

63. Defendant Cook's testimony, as described above, constitutes knowing and intentional perjury.

64. The prosecutor knew Trooper Cook was lying. The video made that clear.

65. Despite this, the prosecutor suborned perjury then chose to take the case to verdict.

66. Tiffanie Hupp was acquitted in under an hour.

67. In sum, Defendant Cook violated the Fourth Amendment both by using excessive force and carrying out an unjustified arrest. He further violated the Fourth Amendment by entering the home without cause and stealing electronic devices in an effort to cover up his behavior. In addition, the prosecution of Hupp constituted

malicious prosecution, and the actions of Defendant Cook directed the malicious prosecution.

68. Each violation was of an established right that the defendants knew or reasonably should have known existed at the time of violation.

69. As a direct result of Defendant's willful, knowing, wrongful, negligent or reckless conduct, Ms. Hupp has been injured in various respects, including, without limitation, suffering emotional trauma from the egregious nature of the treatment inflicted by Defendant Cook and Defendant Cook brandishing his weapon in close proximity to Ms. Hupp, her child, and Mr. Myer's dog.

70. Ms. Hupp has suffered considerable anxiety, has often been unable to sleep, and has had a number of other harmful consequences flowing from this traumatic set of events.

71. The training by the West Virginia State Police has led to the death of at least fifteen dogs between 2010 and 2014, all killed by officers of the West Virginia State Police.[1]

72. In 2014, this training led to the death of a six year old family pet, Willie Pete.

73. West Virginia State Police shot and killed Willie Pete, firing at least three shots toward his owners' home where two infants slept.

74. The incident led to a formal investigation and federal lawsuit against the West Virginia State Police.

75. The policy endangers animals and citizens alike.

---

[1] This information is based on the WVSP's response to a FOIA request demanding transparency and information in regards to multiple dog shootings. *Available at*: http://www.wvgazettemail.com/assets/PDF/CH6199714.pdf

76. The existing training, or lack thereof, of the West Virginia State Police contributed to a policy that encourages the deliberate indifference to the right of citizens to be free from excessive force by the police by:

a. failing to conduct sufficient training or supervision with respect to the constitutional limitations on the use of force;

b. failing to adequately punish unconstitutional uses of force;

c. tolerating the use of unconstitutional force;

d. failing to properly investigate use of excessive force; and,

e. tolerating, encouraging, and permitting false statement by involved officers regarding such situations.

77. Through all of these failures the West Virginia State Police have been deliberately indifferent to the use of force by its officers.

78. The West Virginia State Police were sued for an incident occurring on June 22, 2013 after troopers allegedly used excessive force on the Plaintiff. After the incident, troopers then allegedly conspired to distort and conceal the actual facts and circumstances regarding the incident.[2]

79. Currently, two Kanawha County residents are suing the West Virginia State Police, alleging excessive force and unlawful search and seizure based on an incident in October 8, 2014.[3]

80. In a separate lawsuit, two men allege that the West Virginia State Police beat the Plaintiffs on March 8, 2015.

---

[2] *See* http://wvrecord.com/stories/510631125-man-sues-west-virginia-for-excessive-force
[3] *See* U.S. District Court for the Southern District of West Virginia Case number 2:16-cv-09298.

81. It is the longstanding, widespread, custom, habit, and practice and/or policy of the West Virginia State Police to permit officers to use excessive force against individuals when such use is unnecessary and unjustified, as well as to fail to supervise and train troopers in the appropriate constitutional limits on the use of force, knowing that these members of law enforcement therefore pose a serious risk of injury to the public.

82. Defendants West Virginia State Police and Smithers violated the rights of Ms. Hupp and her son when they encouraged, tolerated, ratified, and acquiesced to the malicious prosecution and cover up efforts by police officers by failing to investigate citizen complaints of police misconduct, instead accepting police accounts of events without question.

83. A similar lawsuit was filed against the West Virginia State Police alleging that the West Virginia State Police filed false felony charges against the Plaintiff in April 2015.[4]

84. In 2013, the West Virginia State Police settled a false arrest suit for $50,000 for wrongfully charging the plaintiff with possession of controlled substance, battery, and obstruction of police officers. The charges were dismissed after the video in the dash camera in one of the officers cruisers differed from the criminal complaint.[5]

85. On information and belief, Defendant Cook was never disciplined once it was revealed by video footage that he had misrepresented events relating to his improper use of force against Ms. Hupp in order to cover up his own wrongdoing.

---

[4] *See* U.S. District Court for the Northern District of West Virginia Case number 3:16-cv-00147.
[5] *See* http://wvrecord.com/stories/510604377-state-police-settles-false-arrest-suit-for-50k

86. Ms. Hupp is entitled to punitive damages on all of her claims against the individual Defendants personally to redress their willful, malicious, wanton, reckless and fraudulent conduct.

87. Notice of these claims was provided to the appropriate parties, at least 30 days in advance of the filing of this law, as required by West Virginia law.

## CLAIMS FOR RELIEF

**First Claim for Relief**
**42 U.S.C. § 1983 Unlawful Arrest in Violation of the Fourth and Fourteenth Amendment**
(Tiffanie Hupp against Cook in his individual capacity)

88. Plaintiff Tiffanie Hupp hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

89. 42 U.S.C. § 1983 provides that:

Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

90. Ms. Hupp is a citizen of the United States and all of the individual police officer Defendants to this claim are persons for purposes of 42 U.S.C. § 1983.

91. All individual Defendants to this claim, at all times relevant hereto, were acting under the color of state law in their capacity as West Virginia State Police officers and their acts or omissions were conducted within the scope of their official duties or employment.

92. At the time of the complained of events, Ms. Hupp had a clearly established constitutional right under the Fourth Amendment to be secure in her person from unreasonable seizure through excessive force.

93. By unlawfully and without probable cause arresting Ms. Hupp, Defendant Cook violated her clearly established Fourth Amendment right to be free from unreasonable seizures.

**Second Claim for Relief**
**42 U.S.C. § 1983 Excessive Force in Violation of the Fourth and Fourteenth Amendment**
(Tiffanie Hupp against Cook in his individual capacity)

94. Plaintiff Tiffanie Hupp hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

95. 42 U.S.C. § 1983 provides that:

Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

96. Ms. Hupp is a citizen of the United States and all of the individual police officer Defendants to this claim are persons for purposes of 42 U.S.C. § 1983.

97. All individual Defendants to this claim, at all times relevant hereto, were acting under the color of state law in their capacity as West Virginia State Police officers and their acts or omissions were conducted within the scope of their official duties or employment.

98. By unlawfully, unnecessarily and with excessive force grabbing and throwing Ms. Hupp to the ground, and pushing her against the police car, Defendant Cook used excessive force in violation of clearly established Fourth Amendment doctrine.

99. Ms. Hupp also had the clearly established Constitutional right under the Fourth and Fourteenth Amendment to bodily integrity and to be free from excessive force by law enforcement.

100. Any reasonable police officer would have known of these rights to be free from unreasonable seizures and excessive force at the time of the complained conduct as they were clearly established at the time.

101. No reasonable officer would have believed it was lawful to use the force Defendant Cook used.

102. Defendant Cook's actions and use of force, as described herein, were objectively unreasonable in light of the facts and circumstances confronting him and violated the Fourth Amendment rights of Ms. Hupp.

103. Defendants Cook's actions and use of force, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to Ms. Hupp's federally protected rights. The force used by Defendant Cook shocks the conscience and violated these Fourteenth Amendment rights of Ms. Hupp.

104. Defendant Cook unlawfully seized Ms. Hupp by objectively unreasonable means, excessive physical force, thereby unreasonably restraining Ms. Hupp of her freedom.

105. Defendant Cook engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Ms. Hupp's clearly established constitutional rights.

106. As a proximate result of Defendant's unlawful conduct, Ms. Hupp has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendants' unlawful conduct, Ms. Hupp has incurred special damages, including medically related expenses, and may continue to incur further medically and other special damages related expenses, in amounts to be established at trial.

107. In addition to compensatory and special damages, Ms. Hupp is entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. § 1983, in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Ms. Hupp.

**Third Claim for Relief**
**42 U.S.C. § 1983 Malicious Prosecution in Violation of the Fourth and Fourteenth Amendment**
(Tiffanie Hupp against Cook in his individual capacity)

108. Plaintiff Tiffanie Hupp hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

109. Defendant Cook encouraged and caused the criminal charges and prosecution to be brought, not out of a belief that probable cause existed for their issuance, but rather for unconstitutional purposes and to attempt to punish Ms. Hupp.

110. Defendant Cook's arrest of Tiffanie Hupp was not supported by probable cause and the authorities continued her prosecution after it was apparent that she was innocent.

111. Hupp was seized pursuant to legal process that was not supported by probable cause and the criminal proceedings have terminated in her favor.

112.  Specifically, Defendant Cook provided knowingly false information and testimony in an attempt to support the sham prosecution of Ms. Hupp, including:

A.  Testifying that she obstructed him when in fact she did not disobey any orders;

B.  Testifying that Buddy was a threat;

C.  Testifying that there was a functioning crossbow at the scene;

D.  Testifying that Hupp was the aggressor;

E.  Testifying that Hupp's actions violated the law;

F.  Failing to testify that Hupp was following Cook's instructions;

G.  Attempting to confiscate and hide the footage of the events by illegally entering the home and illegally removing the recording devices;

H.  In general, participating in and encouraging the prosecution of Hupp despite actual knowledge that she did not violate the law.

113. There was no probable cause to prosecute Ms. Hupp, as she had violated no law and there was video evidence of this fact.

114. Instead, Defendant Cook encouraged and supported the prosecution of Ms. Hupp to cover up his behavior and to punish her for making the video of his illegal behavior public.

115. Defendant Cook, at all times relevant hereto, was acting under the color of state law in his capacity as West Virginia State Police officer and his acts were conducted within the scope of his official duties or employment.

116. Any reasonable police officer knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

117. Defendant engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Ms. Hupp's federally protected constitutional rights.

118. The procurement of prosecution against Ms. Hupp for the known to be false allegations of obstruction of justice or obstructing an officer was malicious, shocking, and objectively unreasonable in the light of the circumstances.

119. Defendant Cook encouraged prosecution and then supported it through perjured testimony, as described throughout this complaint.

120. The criminal proceedings terminated in Ms. Hupp's favor when the jury acquitted her in under an hour.

121. Defendant Cook carried out his acts with an illegal purpose, with full knowledge they were illegal, and his actions were such that no reasonable officer could believe they were lawful.

**Fourth Claim for Relief**
**Malicious Prosecution in Violation of West Virginia Law**
(Tiffanie Hupp against Defendant Cook in his individual and official capacities and West Virginia State Police)

122. Plaintiff Tiffanie Hupp hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

123. Defendant Cook encouraged and caused the criminal charges and prosecution to be brought, not out of a belief that probable cause existed for their issuance, but rather for unconstitutional purposes and to attempt to punish Ms. Hupp.

124. Specifically, Defendant Cook provided knowingly false information and testimony in an attempt to support the sham prosecution of Ms. Hupp, including:

A.   Testifying that she obstructed him when in fact her hands were up and she was obeying orders;

B.   Testifying that Buddy was a threat;

C.   Testifying that there was a functioning crossbow at the scene;

D.   Testifying that Hupp was the aggressor;

E.   Testifying that Hupp's actions violated the law;

F.   Failing to testify that Hupp was following Cook's instructions;

G.   Attempting to confiscate and hide the footage of the events by illegally entering the home and illegally removing the recording devices;

H.   In general, participating in and encouraging the prosecution of Hupp despite actual knowledge that she did not violate the law.

125. There was no probable cause to prosecute Ms. Hupp, as she had violated no law and there was video evidence of this fact.

126. Instead, Defendant Cook encouraged and supported the prosecution of Ms. Hupp to cover up his behavior and to punish her for making the video of his illegal behavior public.

127. Defendant Cook, at all times relevant hereto, was acting under the color of state law in his capacity as West Virginia State Police officer and his acts were conducted within the scope of his official duties or employment.

128. Any reasonable police officer knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

129. Defendant engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Ms. Hupp's federally protected constitutional rights.

130. The procurement of prosecution against Ms. Hupp for the known to be false allegations of obstruction of justice or obstructing an officer was malicious, shocking, and objectively unreasonable in the light of the circumstances.

131. Defendant Cook encouraged prosecution and then supported it through perjured testimony, as described throughout this complaint.

132. The criminal proceedings terminated in Ms. Hupp's favor when the jury acquitted her in under an hour.

133. Defendant Cook carried out his acts with an illegal purpose, with full knowledge they were illegal, and his actions were such that no reasonable officer could believe they were lawful.

134. Defendant Cook at all times relevant hereto was acting pursuant to West Virginia State Police custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in his actions pertaining to Plaintiff.

135. In the alternative, the West Virginia State Police have a complete absence of policies and procedures to ensure that officers provide reliable information to prosecutors. Instead, Defendant Cook was able to provide patently false information to prosecutors despite evidence publicly available and available to the West Virginia State Police that proved that the prosecution of Ms. Hupp was without probable cause.

136. In the alternative, the because the rights violated by Defendant Cook were clearly established and because Defendant Cook was acting within the scope of his employment, the West Virginia State Police may be held liable under the doctrine of *respondeat superior* along with Defendant Cook.

137. Further, Defendant Cook testified falsely under oath but received no disciplinary action. This is further evidence that the West Virginia State Police lack sufficient policies and procedures to deter perjured testimony and malicious prosecution.

138. As a proximate result of Defendants' unlawful conduct, Ms. Hupp has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendants' unlawful conduct, Ms. Hupp has incurred special damages, including medically related expenses and may continue to incur further medically and other special damages related expenses, in amounts to be established at trial.

139. In addition to compensatory and special damages, Ms. Hupp is entitled to punitive damages in that the actions were taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Ms. Hupp.

140. Upon information and belief, the West Virginia State Police's insurance policy, includes coverage for wrongful acts by any insured. Insured includes employees. This provides coverage for this claim and the coverage is up to $1 million.

**Fifth Claim for Relief**
**42 U.S.C. § 1983 Deliberately Indifferent Policies, Practices, Customs, Hiring**
**Training, and Supervision in violation of the Fourth and Fourteenth in violation of 42**
**U.S.C. § 1983**
(Tiffanie Hupp against Defendant Smithers in his individual capacity)

141. Plaintiff Tiffanie Hupp hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

142. Defendant Smithers, at all times relevant hereto, was acting under the color of state law in his capacity as West Virginia State Police officer and his acts or omissions were conducted within the scope of his official duties or employment.

143. At the time of the complained of events, Ms. Hupp had the clearly established constitutional right to be secure in her person from unreasonable seizure through excessive force, under the Fourth Amendment and the right to bodily integrity and to be free from excessive force by law enforcement under the Fourteenth Amendment.

144. Upon information and belief, it was the policy and/or custom of the defendant to inadequately supervise, and train officers, including Defendant Cook, thereby failing to adequately discourage constitutional violations.

145. Upon information and belief, Defendant Smithers had actual knowledge that the West Virginia State Police officers lacked appropriate training to deal with animals and despite this knowledge refused to provide additional, necessary training.

146. Upon information and belief, Smithers had the authority to institute the necessary training policies and failed to do so, in violation of the provisions of the United States Constitution, the Fourth and Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983, and under state law of the State of West Virginia.

147. As a result of the above described policies and customs, police officers including Defendant Cook, believed that their actions would not be properly monitored by supervisory officers and that their misconduct would not be sanctioned, but, rather, would be tolerated.

148. Upon information and belief, Cook was never disciplined by Smithers or any other West Virginia State Police supervisor, despite the right to do so. This constituted

assistance, after the fact, in that it encouraged future officers to act as Cook did and protected Cook from discipline.

149. The above-described policies and customs demonstrated a deliberate indifference on the part of the policymakers of the States of West Virginia to the constitutional rights of persons within the State of West Virginia.

150. As a proximate result of Defendant's unlawful conduct, Ms. Hupp has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendant's unlawful conduct, Plaintiff has incurred special damages, including medically related expenses and may continue to incur further medically and other special damages related expenses, in amounts to be established at trial.

151. In addition to compensatory and special damages, Ms. Hupp is entitled to punitive damages under 42 U.S.C. § 1983, in that the actions of Defendant have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Ms. Hupp.

**Sixth Claim for Relief**
**Negligent Training, Supervision, Retention under West Virginia State Law**
(Tiffanie Hupp against Smithers in his individual and official capacity and West Virginia State Police)

152. Plaintiff Tiffanie Hupp hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

153. Defendant West Virginia State Police and Smithers had a duty to use reasonable care in the training, supervision, and retention of its employees to make sure that its employees are fit for their position by implementing policies and procedures

designed to prevent wrongful acts by its employees, such as those committed by Defendant Cook against Ms. Hupp.

154. Defendant West Virginia State Police and Smithers breached this duty by permitting their officers to threaten to shoot dogs when they are chained up and wagging their tail. West Virginia State Police should have known of its officers' unreasonable response to dogs since shooting are documented in the public record and have been reported in the local news. Therefore, Defendants breached their duties by not updating the policy.

155. The failure to train officers regarding animal safety, and the reckless training that encouraged drawing a weapon even when animals posed no threat, created a foreseeable risk to animals and citizens.

156. At all relevant times, the officers were employed by the West Virginia State Police, yet the West Virginia State Police failed to adequately train its employees.

157. Upon information and belief, Defendant Smithers could have trained Defendant Cook and disciplined him, neither of which happened.

158. There is an urgent need for injunctive relief to require new training, effective policies and procedures, and overall overhaul of the West Virginia State Police's behavior, as even after Defendant Cook's behavior no changes have been filed and Defendant Cook was never disciplined.

159. As a result of this breach, Ms. Hupp has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendants' unlawful conduct, Ms. Hupp has incurred special damages,

including medically related expenses and may continue to incur further medically and

other special damages related expenses, in amounts to be established at trial.

160. All cause of action complained of herein against West Virginia State Police and the

individual officers in their official capacity seek on to recover to the extent they are

covered by liability insurance and do not seek to cover taxpayer payments.

**Seventh Claim for Relief**
**Intentional Infliction of Emotional Distress**
(Tiffanie Hupp and Riley Hupp against Defendant Cook in his individual and official
capacity and West Virginia State Police)

161. Plaintiffs Tiffanie Hupp and Riley Hupp hereby incorporates all other paragraphs of

this Complaint as if fully set forth herein.

162. Defendant Cook, acting in his official capacity, intentionally grabbed and shoved Ms.

Hupp while she was in the presence of her young son and, while she explicitly

attempted to protect Buddy by shouting "Don't do that."

163. The conduct of Defendant Trooper Cook was so blatant and outrageous as to

exceed all bounds of decency.

164. Defendant Cook's brandishing his weapon, in the presence of Riley Hupp and when

it was entirely unnecessary, involved reckless disregard for basic community

standards of decency in the specific context presented.

165. Defendant Cooks' decision to batter Ms. Hupp and then arrest her further inflicted

severe emotional distress on Ms. Hupp and her three-year-old son, Riley Hupp.

166. Defendant Cooks' decision to encourage and support the prosecution of Ms. Hupp despite a complete absence of probable cause involved reckless disregard for basic community standards, shocked the conscience, and was outrageous.

167. Defendant Cook conducted himself with reckless disregard for inflicting emotional distress on Ms. Hupp and Riley Hupp.

168. As described throughout, the West Virginia State Police had policies and procedures that encouraged this behavior.

169. In the alternative, the West Virginia State Police had no policies or procedures to prevent this behavior.

170. As a result of this breach, Ms. Hupp and Riley Hupp have suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendants' unlawful conduct, Ms. Hupp and Riley Hupp have incurred special damages, including medically related expenses, and may continue to incur further medically and other special damages related expenses, in amounts to be established at trial. Further, Ms. Hupp and Riley Hupp seek declaratory and injunctive relief to prevent this behavior from occurring again, including an order requiring retraining, revised policies and procedures, and disciplinary policies that would punish similar illegal behavior in the future.

171. All cause of action complained of herein against West Virginia State Police and the individual officers in their official capacity seek only to recover to the extent they are covered by liability insurance and do not seek to cover taxpayer payments.

**Eighth Claim for Relief**
**Battery**
(Tiffanie Hupp against Defendant Cook in his individual and official capacity)

172. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

173. Defendant Cook committed a Battery on Ms. Hupp by applying unjustified, unreasonable, and excessive force upon Ms. Hupp when he grabbed her and threw her on the ground, then lifted her and pushed her against the police cruiser.

174. The contact was harmful and offensive.

175. The contact was not consented to and was unlawful.

176. The above-described acts and conduct were malicious, intentional, willful and harmful offensive contacts that caused physical and mental injury.

177. As a direct and proximate cause of the defendant's intentional conduct, Plaintiff has suffered extreme emotional distress and other harm for which she is entitled to recover.

178. All cause of action complained of herein against West Virginia State Police and the individual officers in their official capacity seek only to recover to the extent they are covered by liability insurance and do not seek to cover taxpayer payments.


**Ninth Claim for Relief**
**42 U.S.C. § 1983 Unlawful Search in Violation of the Fourth and Fourteenth Amendment**
(Clifford Myers against Defendant Cook in his individual capacity)

179. Plaintiff Cliff Myers hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

180. Mr. Myers is a citizen of the United States and the individual police officer Defendant to this claim is a person for purposes of 42 U.S.C. § 1983.

181. Defendant Cook's entry of Mr. Myers' home without a warrant, consent or other legal justification constituted a violation of clearly established Fourth Amendment law.

182. The home has a uniquely protected status under the Fourth Amendment and the intrusion on privacy and the injury to the basic right to be left alone enshrined in the Fourth Amendment was clearly violated by Defendant Cook's unlawful entry.

**Tenth Claim for Relief**
**42 U.S.C. § 1983 Unlawful Seizure in Violation of the Fourth and Fourteenth Amendment**
(Clifford Myers against Defendant Cook in his individual capacity)

183. Plaintiff Cliff Myers hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

184. Mr. Myers is a citizen of the United States and the individual police officer Defendant to this claim is a person for purposes of 42 U.S.C. § 1983.

185. Defendant Cook's seizure of Mr. Myer's phone without a warrant, consent or other legal justification constituted a violation of clearly established Fourth Amendment law.

186. Mr. Myers has a clearly established constitutional right to not to have his phone unreasonably seized.

187. As a direct and proximate result of Defendant Cook's conduct, Mr. Myers has suffered damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial.

188. In addition to compensatory and special damages, Mr. Myers is entitled to punitive damages against Defendant Cook under 42 U.S.C. § 1983, in that the actions of

Defendant Cook were taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Mr. Myers.

189. Punitive damages are particularly warranted where, as here, the officer unreasonably seized a recording device in an effort to prevent video and photos of his misconduct from being revealed to the public.

**Eleventh Claim for Relief**
**42 U.S.C. § 1983 Unlawful Seizure in Violation of the Fourth and Fourteenth Amendment**
(Clifford Myers against Defendant Cook in his individual capacity)

190. Plaintiff Cliff Myers hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

191. Mr. Myers is a citizen of the United States and the individual police officer Defendant to this claim is a person for purposes of 42 U.S.C. § 1983.

192. Defendant Cook's seizure of Mr. Myer's dog without a warrant, consent or other legal justification constituted a violation of clearly established Fourth Amendment law.

193. Defendant Cook testified that he planned to shoot Buddy.

194. Defendant Cook would have shot Buddy if Ms. Hupp had not stepped in front of him.

195. Defendant's attempted shooting of Buddy when Buddy posed no threat to the officer and was more than two feet away is inconsistent with clearly established law.

196. Mr. Myers has a clearly established constitutional right to not have his dog seized at gunpoint and nearly shot without cause.

197. As a direct and proximate result of Defendant Cook's conduct, Mr. Myers has suffered damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial.

198. In addition to compensatory and special damages, Mr. Myers is entitled to punitive damages against Defendant Cook under 42 U.S.C. § 1983, in that the actions of Defendant Cook were taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Mr. Myers.

199. Punitive damages are also uniquely important where, as here, the officer was about to shoot an innocent and harmless animal that could not reach the officer.

## VI. Jury Trial Demand

200.    Plaintiffs demand a jury trial on all issues so triable.

## VII. Damages and Relief

Plaintiff prays that this Court enter judgment for the Plaintiff and against each of the Defendants and grant:

A. compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

B. economic losses on all claims allowed by law;

C. presumed damages for the harm to the Plaintiffs of rights that are difficult to quantify, including but not limited to violations of the right to be free from an arrest without probable cause.

C. special damages in an amount to be determined at trial;

D. punitive damages on all claims allowed by law against individual Defendants and in an amount to be determined at trial;

E. attorneys' fees and the costs associated with this action under 42 U.S.C. § 1988, including expert witness fees, on all claims allowed by law;

F. pre- and post-judgment interest at the lawful rate;

G. injunctive relief, including an order requiring the West Virginia State Police to institute policies and procedures to prevent the repetition of the illegal acts described herein; and

H. any further relief that this court deems just and proper, and any other appropriate relief at law and equity.


Respectfully submitted July 13, 2017

/s/John Campbell
John Campbell
Campbell Law LLC
20 S. Sarah St.
St. Louis, MO 63108
john@campbelllawllc.com
314-588-8101

and

David Schles
815 Quarrier St., Suite 306
Charleston, WV 25301
schles_law@wirefire.com
304-344-1559

and

Justin Marceau
2255 E. Evans Ave.
Denver, CO 80208
jmarceau@law.du.edu
303-871-6449

CERTIFICATE OF SERVICE

A true and accurate copy of the foregoing was emailed on July 13, 2017, to the parties indicated below and will be distributed to the via CM/ECF.

Michael Mullins
Michael.mullins@steptoe-johnson.com
Robert L. Bailey
Robert.bailey@steptoe-johnson.com
707 Virginia St. E. 17th Floor
P.O.  Box 1588
Charleston, W. Va. 25326-1588
304-353-80000

/s/John Campbell