IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

TIFFANIE HUPP, et al.,

                Plaintiffs,

v.                                CIVIL ACTION NO.  2:17-cv-00926

STATE TROOPER SETH COOK, et al.,

                Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendants' motion for summary judgment, (ECF No. 92), and Plaintiffs' motion for partial summary judgment.[1]  (ECF No. 90.)  For the reasons discussed more fully below the Court **GRANTS** Defendants' motion.  (ECF No. 92.)  The Court further **DENIES** Plaintiffs' motion.  (ECF No. 90.)

## I.   BACKGROUND

On May 9, 2015, Plaintiff Clifford Myers ("Myers") contacted the West Virginia State Police ("State Police") from his home in Waverly, West Virginia to report an altercation with a neighbor.  (*See* ECF No. 33 at ¶ 14.)  Troopers Seth Cook ("Cook") and S.S. Michael ("Michael") responded to the call.  (*Id.* at ¶ 15.)  After conversing with the neighbors and confirming the altercation had subsided, Cook entered Myers' front yard and began walking toward the residence.  (*Id.* at ¶ 16.)  Myers' stepdaughter, Plaintiff Tiffanie Hupp ("Hupp"), and her son, three-year-old Riley Hupp ("R.H."), were playing in the front yard.  (*Id.* at ¶ 18.)  Buddy,

---

[1] Also pending before the Court are Plaintiffs' motion for oral arguments on Plaintiffs' motion for partial summary judgment, (ECF No. 104), and Defendants' motion to continue trial and jury selection.  (ECF No. 116)  As this opinion resolves the case, both motions are **DENIED AS MOOT**.  (ECF No. 104; ECF No. 116.)

Myers' dog, was also in the yard and began to bark at Cook's approach. (*Id.* at ¶ 19.) Cook drew his firearm and pointed the weapon at Buddy. (*Id.* at ¶ 23.) Hupp ran and placed her body between Buddy and Cook. (*Id.* at ¶ 29.) Hupp alleges that Cook grabbed her, threw her to the ground, and placed her under arrest. (*Id.* at ¶ 35.) R.H. witnessed the entire episode. (*Id.* at ¶ 37.) Cook, after being told that the incident had been recorded, then entered Myers' residence and seized four electronic devices, including Myers' cell phone which had been used to record the incident. (*See id.* at ¶¶ 44–47.) The State Police retained possession of these devices for about one month before returning them. (*Id.* at ¶ 52.)

Hupp was arraigned in the magistrate court and released on bond. (*See* ECF No. 92-3 at 83; ECF No. 93 at 18.) West Virginia prosecutors charged Hupp with obstructing an officer, a misdemeanor offense. (*See* ECF No. 33 at ¶ 55.) On February 29, 2016, the case was tried by a jury in the magistrate court of Wood County, West Virginia. (*Id.* at ¶¶ 55, 57.) Plaintiffs allege that Cook testified falsely and withheld information from the jury during the trial. (*See id.* at ¶¶ 58–62.) At the conclusion of testimony, the jury returned a verdict of acquittal. (*Id.* at ¶ 66.)

On January 25, 2017, Plaintiffs Myers, Hupp, and R.H., through his guardian Hupp, filed suit in this Court against Cook, Colonel C.R. "Jay" Smithers ("Smithers"), and the State Police, invoking the Court's federal question jurisdiction over the § 1983 claims and asking the Court to exercise supplemental jurisdiction over the remaining state law claims. (*See* ECF No. 1.) Plaintiffs were subsequently granted leave to file an Amended Complaint. (*See* ECF No. 32.) The Amended Complaint consists of eleven counts, with the central claims arising under 42 U.S.C. § 1983. (*See* ECF No. 33.) The claims are summarized as follows:

> Count I: Unlawful arrest in violation of the Fourth and Fourteenth Amendments (Hupp against Cook in his individual capacity);

Count II: Excessive force in violation of the Fourth and Fourteenth Amendments (Hupp against Cook in his individual capacity);

Count III: Malicious prosecution in violation of the Fourth and Fourteenth Amendments (Hupp against Cook in his individual capacity);

Count IV: State tort claim for malicious prosecution (Hupp against the State Police and Cook in his individual and official capacities);

Count V: Deliberate indifference and supervisory liability in violation of the Fourth and Fourteenth Amendments (Hupp against Smithers in his individual capacity);

Count VI: State tort claim for negligent training, supervision, and retention (Hupp against the State Police and Smithers in his individual and official capacities);

Count VII: Intentional infliction of emotional distress (Hupp and R.H. against the State Police and Cook in his individual and official capacities);

Count VIII: Battery (Hupp against Cook in his individual and official capacities);

Count IX: Unlawful search in violation of the Fourth and Fourteenth Amendments (Myers against Cook in his individual capacity),

Count X: Unlawful seizure in violation of the Fourth and Fourteenth Amendments (Myers against Cook in his individual capacity), and

Count XI: Unlawful seizure in violation of the Fourth and Fourteenth Amendments (Myers against Cook in his individual capacity).

(*See id.*)

Defendants moved for partial dismissal on April 11, 2017. (ECF No. 8.) The Court granted in part and denied in part Defendants' motion. (*See* ECF No. 32.) Specifically, the Court dismissed Counts IV, VI, VII, and VIII of the Amended Complaint to the extent they stated claims against the State Police and its officers in their official capacities, which removed the State Police as a party to this action. (*See id.* at 12.) The Court further dismissed Count VI *en toto*. (*See id.*)

On March 8, 2018, Plaintiffs filed the present motion for partial summary judgment seeking judgment as a matter of law on Counts I, II, IX, and X of the Amended Complaint, (ECF No. 90), to which Defendants timely responded, (ECF No. 98), and Plaintiffs timely replied. (ECF No. 103.) Defendants subsequently filed a motion for summary judgment seeking judgment as a matter of law on all of Plaintiffs' remaining claims, (ECF No. 92), to which Plaintiffs timely responded, (ECF No. 99), and Defendants timely replied. (ECF No. 102.) As such, both motions are fully briefed and ripe for adjudication.

## II. *LEGAL STANDARD*

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. This rule provides, in relevant part, that summary judgment should be granted if "there is no genuine issue as to any material fact." *See* Fed. R. Civ. P. 56. Summary judgment is inappropriate, however, if there exist factual issues that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). When evaluating such factual issues, the Court must view the evidence "in the light most favorable to the [party opposing summary judgment]." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). However, Rule 56 limits the Court's analysis to the parties' cited materials. *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). Once the moving party has met its burden, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If a party fails to make a sufficient showing on one element of that party's case, the failure of proof "necessarily renders all other facts immaterial." *Id.* at 323.

"[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256. "The mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to withstand summary judgment; the judge must ask whether "the jury could reasonably find for the plaintiff." *Id.* at 252.

## III.   DISCUSSION

Cross-motions for summary judgment are reviewed separately if material facts are in dispute. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003). Here, as discussed more fully below, there is not a genuine dispute of material fact. However, because Plaintiff only asks for partial summary judgment, the Court will address each motion for summary judgment separately beginning with Defendants' motion.

### A.   *Defendants' Motion for Summary Judgment*

In their motion for summary judgment, Defendants argue that they are entitled to judgment as a matter of law as to each of the remaining counts of Plaintiffs' Amended Complaint. (*See* ECF No. 93.) The Court will address each of Defendants' arguments separately.

1. <u>Qualified Immunity</u>

Defendants first argue that Cook is entitled to qualified immunity as to Hupp's false arrest, excessive force, and malicious prosecution claims. (*See* ECF No. 93 at 10–22.) Specifically, Defendants argue that Cook had probable cause to arrest Hupp for obstructing a law-enforcement officer and thus her arrest and her subsequent prosecution were valid. (*See id.* at 12–16, 17–22.) Defendants further argue that Cook used objectively reasonable, *de minimis* force to arrest Hupp. (*See id.* at 16–17.)

"The doctrine of qualified immunity shields officials from liability for civil damages when their conduct does not violate clearly established constitutional or other rights that a reasonable officer would have known." *Sims v. Labowtiz*, 885 F.3d 254, 260 (4th Cir. 2018) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). In determining whether qualified immunity applies, the Court must look at whether the plaintiff has demonstrated that a depravation of a constitutional right has occurred and whether that right was clearly established at the time of the alleged violation. *See Curtis v. Devlin*, No. 1:04-CV-409, 2005 WL 940571, at *7 (E.D. Va. Apr. 19, 2005). The Court may address either prong of the qualified immunity analysis first.

The Court will address each of Hupp's § 1983 claims separately, beginning with her false arrest claim. As to each claim, the Court will first address whether Plaintiffs' constitutional rights were violated before turning to whether those rights were clearly established.

i. *False Arrest*

As stated above, in Count I of the Amended Complaint, Hupp alleges that Cook arrested Hupp for obstruction without probable cause in violation of the Fourth and Fourteenth Amendments. (*See* ECF No. 33 at ¶ 93.) In his motion, Cook argues that he is entitled to qualified immunity for Hupp's false arrest claim because a reasonable officer could have believed that Hupp had committed obstruction. (*See* ECF No. 93 at 12–16.)

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. CONST. amend. IV. A seizure is unreasonable under the Fourth Amendment if it is not based on probable cause. *See Dunaway v. New York*, 442 U.S. 200, 213 (1979). "If a person is arrested when no reasonable officer could believe . . . that probable cause exists to arrest that person, a violation of a clearly established Fourth Amendment right to be arrested only upon probable cause ensues." *Rogers v. Pendleton*, 249 F.3d 279, 290 (4th Cir. 2001) (citing *Smith v. Reddy*, 101 F.3d 351, 356 (4th Cir. 1996)).

"Probable cause exists when the facts and circumstances within an officer's knowledge—or of which he possesses reasonably trustworthy information—are sufficient in themselves to convince a person of reasonable caution that an offense has been or is being committed." *Wadkins v. Arnold*, 214 F.3d 535, 539 (4th Cir. 2000) (citing *Brinegar v. United States*, 338 U.S. 160 (1949)). "Determining whether the information surrounding an arrest suffices to establish probable cause is an individualized and fact-specific inquiry." *Id.* "[F]or probable cause to exist, there need only be enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed by an individual; evidence sufficient to convict that individual of the charged offense is not required." *Curtis v. Devlin*, 2005 WL 940571, at *7 (citing *Wong Sun v. United States*, 371 U.S. 471, 471 (1963)). The existence of probable cause at the time of a

plaintiff's arrest "turns on two factors in combination:  the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct."  *Rogers*, 249 F.3d at 290 (quoting *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992)).

Here, Cook arrested Hupp for obstruction.  (*See* ECF No. 93 at 12.)  The West Virginia obstruction statute provides the following:

> A person who by threats, menaces, acts or otherwise forcibly or illegally hinders or obstructs or attempts to hinder or obstruct a law-enforcement officer, probation officer or parole officer acting in his or her official capacity is guilty of a misdemeanor and, upon conviction thereof, shall be fined not less than $50 nor more than $500 or confined in jail not more than one year, or both fined and confined.

W. Va. Code § 61-5-17(a).  Cook arrived at Myers' residence because of a dispute between Myers' and his neighbors that involved, in part, complaints about Buddy.  (*See* ECF No. 93 at 1 (citing ECF No. 93-2 at 32 (Myers Dep.).)  The video of the incident[2] shows Cook approaching the front of the residence, Buddy coming towards Cook, and Cook jumping back, removing his service weapon, and pointing it at Buddy.  (*See* ECF No. 95 at 1:16–18 (Video of Incident).)  The video further shows Hupp stepping between Cook's weapon and Buddy as Cook was seemingly attempting to protect himself.  (*See id.* at 1:27–:29.)  Cook motions to Hupp to move out of the way, which she does not obey.  (*See id.* at 1:28.)  Cook then attempts to physically remove Hupp from between him and Buddy.  (*See id.* at 1:29–:31.)  However, Hupp pulls her arm away and otherwise resists Cook's attempts to move her.  (*See id.*)

Under the totality of the circumstances, an objectively reasonable officer could have concluded that Hupp's positioning of herself in front of Cook's service weapon and Hupp's refusal

---

[2] Plaintiffs also provide a copy of the video.  They do not allege that Defendants' copy is doctored, altered, or is in anyway dissimilar from Plaintiffs' copy.  As such, the Court views the facts in this case in the light depicted by the video.  *See Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

to obey Cook's motion to move out of the way constituted obstruction. *See, e.g.*, *Sowers v. City of Charlotte*, 659 F. App'x. 738, 741 (4th Cir. 2016) (finding that there was probable cause to arrest plaintiff under a similar North Carolina obstruction law when plaintiff refused to follow directions and acted confrontationally). Thus, the Court finds Cook had probable cause to arrest Hupp. As such, Cook did not violate Hupp's Fourth Amendment rights when he arrested her. Therefore, the Court need not address the second prong of the qualified immunity test. Accordingly, Cook is entitled to qualified immunity on Hupp's false arrest claim.

ii. *Excessive Force*

In Count II of the Amended Complaint, Hupp alleges that Cook used excessive force during her arrest by allegedly grabbing her and throwing her to the ground and pushing her against the police car. (*See* ECF No. 33 at ¶ 98.) In his motion, Cook argues that he used a *de minimis* amount of force in arresting Hupp and that a reasonable officer could have believed that the amount of force he used was necessary to arrest Hupp. (*See* ECF No. 93 at 16–17.)

"The Fourth Amendment prohibition on unreasonable seizures bars police officers from using excessive force to seize a free citizen." *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). "Generally, an officer is entitled to use 'the amount of force that a reasonable officer would think necessary to take the person being arrested into custody.'" *Lowe v. Spears*, No. 3:06-cv-647, 2009 WL 1393860, at *4 (S.D. W. Va. May 15, 2009) (quoting *Martin v. Gentile*, 849 F.2d 863, 869 (4th Cir. 1988)). However, "[f]orce is considered excessive when it exceeds the bounds of 'objective reasonableness.'" *Id.* (citing *Jones*, 325 F.3d at 527).

To determine whether the amount of force used is objectively reasonable, a court must consider the officer's actions from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citing *Terry v. Ohio*, 392 U.S. 1, 20–22 (1968)). "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers' violates the Fourth Amendment." *Id.* (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). "Facts and circumstances to be evaluated include: 1) 'the severity of the crime at issue;' 2) whether the 'suspect poses an immediate threat to the safety of the officers or others;' and, 3) whether the suspect is 'actively resisting arrest or attempting to evade arrest by flight.'" *Revely v. City of Huntington*, No. 3:07–0648, 2009 WL 1097972, at *4 (S.D. W. Va. Apr. 23, 2009) (quoting *Jones*, 325 F.3d at 527). The extent of a plaintiff's injury is also relevant. *Id.*

Here, after considering the relevant factors and reviewing the circumstances as it must have appeared to Cook, the Court finds that the force used by Cook against Hupp was not objectively unreasonable. Although the crime at issue was minor[3], Hupp's actions could have led an objectively reasonable officer to believe that Hupp was a threat. Hupp positioned herself between Cook and Buddy, which could reasonably be construed as hindering Cook's ability to protect himself. (*See id.* at 1:27–:29.) Furthermore, Hupp could have grabbed Cook's weapon while in this position. Thus, by placing herself in front of Cook's service weapon, a reasonable officer could have viewed Hupp as a threat to his and/or her safety. Accordingly, this potential threat weighs in favor of finding that Cook's use of force was reasonable.

---

[3] In her response, Hupp first argues that any use of force by Cook was unreasonable because the arrest was "patently unreasonable." (*See* ECF No. 99 at 18.) As discussed above, the Court finds that Cook had probable cause to arrest Hupp. *See supra* Part III.A.1.i. Thus, the Court does not find Hupp's argument that any use of force was unreasonable persuasive.

Additionally, Hupp resisted Cook's attempts to arrest. As stated above, the video of the incident shows Hupp pulling her arm away from Cook as he attempts to move her from in between him and Buddy. (*See id.* at 1:29–:30.) Hupp can also be seen pushing and pulling her arm away from Cook as he tries to subdue her. (*See id.* at 1:30.) Hupp then falls on the ground.[4] (*See id.* at 1:30–:31.) Thus, Hupp's actions in resisting Cook's arrest demonstrate that some use of force was needed to subdue and arrest Hupp. *See, e.g.*, *Wilson v. Flynn*, 429 F.3d 465, 468 (4th Cir. 2005) (finding that the use of force was reasonable where the plaintiff disobeyed the officer's orders and physically resisted when the officer attempted to handcuff him). Accordingly, Hupp's resistance also weighs in favor of finding that Cook's use of force was reasonable.

Lastly, although Hupp alleges that she suffered physical and emotional injuries, she has not demonstrated that she has suffered long-lasting or permanent injury. *See, e.g.*, *Revely*, 2009 WL 1097972, at *5 ("[Plaintiff] has not presented evidence of long-lasting or permanent injury. The extent of his injury does not demonstrate the use of unreasonable force."). Thus, Hupp's injuries do not demonstrate that Cook's use of force was unreasonable.

Thus, the totality of these factors weigh in favor of finding that Cook did not use excessive force in arresting Hupp. Furthermore, once Hupp allowed officers to place her hands behind her back and lean her against the police vehicle, Cook's use of force stops. (*See* ECF No. 95 at 1:38–:45.) This further supports Cook's argument that he only used the amount of force necessary to subdue Hupp. *See Wilson*, 429 F.3d at 468–69 ("We also find it significant that [plaintiff] admits that the allegedly excessive force ceased after the officers handcuffed him. As the district court

---

[4] Hupp alleges that Cook shoved Hupp, causing her to fall. (*See* ECF No. 99 at 18.) Cook's back is to the camera at the time Hupp falls. (*See* ECF No. 95 at 1:30–:31.) Therefore, it is unclear whether Hupp fell as a result of her resistance or as a result of Cook pushing her off of him. However, even if the latter is true, it would not change the Court's determination that Cook's use of force was reasonable.

noted, 'this supports the finding that the force used by the officers was that force which was necessary to effect the arrest of [the plaintiff].'" (internal citations omitted)). Thus, Cook's actions did not violate Hupp's Fourth Amendment rights. Accordingly, Cook is entitled to qualified immunity on Hupp's excessive force claim.

### iii.    *§ 1983 Malicious Prosecution*

In Count III of the Amended Complaint, Hupp alleges that Cook "encouraged and caused the criminal charges and prosecution to be brought [against her], not out of a belief that probable cause existed for their issuance, but rather for unconstitutional purposes and to attempt to punish [Hupp]" in violation of the Fourth Amendment. (ECF No. 33 at ¶¶ 109–10.) Hupp further alleges that Cook "provided knowingly false information and testimony in an attempt to support the sham prosecution" of Hupp. (*Id.* at ¶ 112.) Cook, however, argues that Hupp cannot meet the elements of a malicious prosecution claim. (*See* ECF No. 93 at 18.)

The Fourth Circuit has stated that "there is no such thing as a '§ 1983 malicious prosecution' claim" but that claims for malicious prosecution under § 1983 are more appropriately categorized as being "founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution . . . ." *Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000); *see also Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012) ("Although 'it is not entirely clear whether [there is] a separate constitutional right to be free from malicious prosecution, if there is such a right, the plaintiff must demonstrate both an unreasonable seizure and a favorable termination of the criminal proceeding flowing from the seizure.'" (quoting *Snider v. Seung Lee*, 584 F.3d 193, 199 (4th Cir. 2009))); *Burrell v. Virginia*, 395 F.3d 508, 514 (4th Cir. 2005) ("In order for a plaintiff to state a [§] 1983, . . . we have required that the defendant . . .

'seized [plaintiff] pursuant to legal process that was not supported by probable cause . . . .'" (quoting *Brooks v. City of Winston-Salem*, 85 F.3d 178, 183–84 (4th Cir. 1996))). Thus, to maintain a § 1983 malicious prosecution claim, a plaintiff must show the following elements: "that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) (citing *Durham*, 690 F.3d at 188).

Here, the parties do not dispute that the criminal proceedings terminated in Hupp's favor but instead focus their arguments on the element of probable cause. Hupp alleges that there was no probable cause for her arrest and that Cook made false statements in the criminal complaint given to the magistrate judge, which caused the magistrate judge to find probable cause.[5] (*See* ECF No. 33 at ¶¶ 58–64, 112.) Specifically, Hupp alleges that Cook lied about the following:

1. That Buddy continued to growl and approach Cook while Cook's firearm was drawn;

2. That Cook lowered the firearm and ordered Hupp to step aside;

---

[5] Hupp makes two further allegations in support of her malicious prosecution claim. First, Hupp alleges that Cook withheld exculpatory evidence from the prosecutor. (*See* ECF No. 99 at 23.) However, the Fourth Circuit has stated that, "the failure of an officer to disclose exculpatory evidence after a determination of probable cause has been made by a neutral detached magistrate does not render the continuing pretrial seizure of a criminal suspect unreasonable under the Fourth Amendment." *See Taylor v. Waters*, 81 F.3d 429, 437 (4th Cir. 1996); *see also Gray v. Maryland*, 229 F. Supp. 2d 628, 637 (D. Md. 2002) ("Because the Fourth Amendment is the only constitutional provision implicated by a § 1983 malicious prosecution claim, even malfeasance that would normally implicate a common law malicious prosecution claim, such as the continuation of a prosecution without reasonable cause but after an initial appearance, is not actionable under § 1983." (internal citations omitted)). Thus, this allegation is not actionable under § 1983 malicious prosecution claim.

    Hupp further alleges that Cook improperly influenced the prosecutor. (*See* ECF No. 99 at 15–16.) In support of this allegation, Hupp states that no reasonable prosecutor would have determined that there was probable cause and thus Cook must have misled the prosecutor. (*See id.* at 15.) However, Hupp does not provide any evidence that Cook actually unduly influenced the prosecutor to bring charges against her. *See. e.g.*, *Beck v. City of Upland*, 527 F.3d 853, 870 (9th Cir. 2008). As such, the Court does not find this allegation persuasive.

13

3. That Hupp refused to comply with Cook's orders and raised her hands towards Cook; and

4. That Hupp grabbed at Cook and began cursing at him.

(*See* ECF No. 99 at 14.)   Hupp directs the Court to the video of the incident in support of her claim that Cook's above statements were false.   (*See id.*)

Viewing the facts in a light most favorable to Hupp, the Court cannot find that Cook seized Hupp pursuant to legal process unsupported by probable cause.   As discussed more fully above, the undisputed facts show that Cook had probable cause to arrest Hupp for obstruction.   *See supra* Part III.A.1.i.   Furthermore, a neutral magistrate determined that there was probable cause to arrest Hupp.   *See Brooks*, 85 F.3d. at 184 ("Once a pretrial seizure has been rendered reasonable by virtue of a probable cause determination by a neutral and detached magistrate, the continuing pretrial seizure of a criminal defendant—either by detention or by bond restrictions—is reasonable." (citing *Taylor*, 81 F.3d at 436)).   (*See also* ECF No. 93 at 18.)

Even assuming that Cook lied in the criminal complaint, and even after excising these allegedly false statements from the criminal complaint, there is still ample evidence in the criminal complaint for a magistrate to find that there was probable cause to arrest Hupp.   (*See* ECF No. 90-12 at 3 (Crim. Compl.).)   Without these statements, the criminal complaint still states that Hupp stepped in between Cook and Buddy as Cook was attempting to protect himself from Buddy. (*See id.*)   Additionally, as discussed more fully above, the video shows Hupp attempting to pull her arm away from Cook as he tries to move her and, therefore, the Court cannot find that Cook's statement that Hupp refused to comply and raised her arm was false.   Thus, even if Cook made false statements to the magistrate, these statements did not preclude a finding of probable cause.

Furthermore, "even if the existence of probable cause were a close question, the 'qualified immunity standard gives ample room for mistaken judgments.'" *See Durham*, 690 F.3d at 189 (quoting *Henry v. Purnell*, 652 F.3d 524, 534 (4th Cir. 2011)).

For these reasons, the Court **FINDS** that Hupp cannot establish that she was seized pursuant to legal process that was without probable cause. *See Spivey v. Norris*, 2018 WL 1768248, at *4 (4th Cir. Apr. 12, 2018) ("Therefore, if probable cause existed such that there was no Fourth Amendment violation, [defendant] would be entitled to qualified immunity . . . ."); *see also Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017) ("[T]he sole question at issue is whether there was probable cause to arrest [plaintiff]."). As such, Hupp cannot establish a § 1983 malicious prosecution claim. Therefore, Cook did not violate Hupp's Fourth Amendment rights. Thus, the Court need not address the second prong of the qualified immunity test. Accordingly, Cook is entitled to qualified immunity on Hupp's § 1983 malicious prosecution claim.

### iv.    *Common Law Malicious Prosecution*

In Count IV of the Amended Complaint, Hupp alleges a common law claim for malicious prosecution. (*See* ECF No. 33 at ¶¶ 122–37.) Specifically, Hupp alleges that Cook encouraged criminal charges to be brought against her "for unconstitutional purposes and to attempt to punish" her. (*See id.* at ¶ 123.) Hupp further reiterates the argument from her § 1983 malicious prosecution claim regarding Cook's allegedly false testimony. (*See id.* at ¶ 124.) Cook combines his arguments for Hupp's § 1983 and common law malicious prosecution claims and asserts that Hupp cannot prove that her prosecution was without probable cause and that Cook did not procure her alleged "sham" prosecution.

Under West Virginia law, to maintain a cause of action for malicious prosecution, a plaintiff must show the following:

> (1) that the prosecution was set on foot and conducted to its termination, resulting in plaintiff's discharge; (2) that it was caused or procured by defendant; (3) that it was without probable cause; and (4) that it was malicious.

*Morton v. Chesapeake & Ohio Ry. Co.*, 399 S.E.2d 464, 467 (W. Va. 1990) (quoting *Radochio v. Katzen*, 114 S.E. 746, Pt. 1 Syl. (W. Va. 1922)) (internal quotation marks omitted). Malice can be inferred from a criminal charge where there is no probable cause for such prosecution as shown by a preponderance of the evidence. *Truman v. Fid. & Cas. Co.*, 123 S.E.2d 59, 68 (W. Va. 1961).

As discussed more fully above, the Court finds that Cook had probable cause to arrest Hupp. Additionally, this Court has previously stated that "[i]n order to proceed with their malicious prosecution claim, [p]laintiffs have the burden to plead and demonstrate a lack of probable cause underlying the citation" or arrest. *See Hallman-Warner v. Bluefield State College*, No. 1:17-cv-2882, 2018 WL 1309748, at *13 (S.D. W. Va. Jan. 19, 2018) (citing *Jarvis v. W. Va. State Police*, 711 S.E.2d 542, 549 (W. Va. 2010)); *see also Bennett v. Booth*, No. 3:04-cv-1322, 2005 WL 2211371, at *5 (S.D. W. Va. Sept. 9, 2005) ("[B]ecause the Court has already found that [defendant] had probable cause for the arrest, [p]laintiff's claim for malicious prosecution must be dismissed"). As the Court finds there was probable cause to arrest Hupp, Hupp cannot meet the lack of probable cause element of her malicious prosecution claim. Therefore, Cook did not violate Hupp's Fourth Amendment. Thus, the Court need not address the second prong of the qualified immunity test. Accordingly, Cook is entitled to qualified immunity on Hupp's state law malicious prosecution claim.

2. <u>Supervisory Liability Claim</u>

In Count V of the Amended Complaint, Hupp asserts a § 1983 supervisory liability claim against Smithers alleging deliberate indifference as to policies, practices, customs, hiring, training, and supervision as to the use of excessive force and unconstitutional seizures. (*See* ECF No. 33 at ¶¶ 144–49.) Hupp also appears to allege that Smithers was deliberately indifferent to the unreasonable seizure of animals by asserting that Smithers knew that State Police officers lacked the appropriate training to deal with animals and, despite this knowledge, failed to institute the necessary training and policies to combat this. (*See id.* at ¶¶ 144–46.) Hupp further alleges that Smithers failed to discipline officers for their misconduct. (*See id.* at ¶¶ 147–48.)

In his motion for summary judgment, Smithers argues that Hupp has failed to provide any evidence as to the elements of this claim. (*See* ECF No. 93 at 23–24.) Specifically, Smithers argues that Cook did not violate Hupp's rights and, thus, there is no claim against Smithers. (*See id.* at 24.)

To establish a supervisory liability claim under § 1983, a plaintiff must establish the following three elements: "(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw v. Stroud*, 13 F.3d 791, 499 (4th Cir. 1994) (citing *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir.1990); *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984); *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983)).

Here, as discussed more fully above, the Court finds that Cook did not violate Hupp's constitutional rights. *See supra* Part III.A.1.i–iv. As Hupp cannot establish unconstitutional actions by Cook, Hupp cannot establish a supervisory liability claim against Smithers. *See Waybright v. Frederick Cty., MD*, 528 F.3d 199, 204, 209 (4th Cir. 2008) ("[S]upervisors and municipalities cannot be liable under § 1983 without some predicate 'constitutional injury at the hands of the individual [state] officer . . . .'" (quoting *City of Los Angeles v. Heller*, 474 U.S. 796, 799 (1986))); *Cruden v. Brinkley*, No. 98-1224, 1999 WL 152597, at *4 (4th Cir. Mar. 22, 1999) ("[Plaintiff's] claim against [defendant] in his official capacity fails because [plaintiff] fails to establish an underlying constitutional violation by the officer charged with the misconduct."). Accordingly, Smithers is entitled to summary judgment on Hupp's supervisory liability claim.

### 3. Outrage Claim

In Count VII of the Amended Complaint, Hupp and R.H. allege that Cook intentionally inflicted emotion distress on Hupp and R.H. when Cook pointed his service weapon at Buddy and arrested Hupp for obstruction. (*See* ECF No. 32 at ¶¶ 161–71.) Specifically, Plaintiffs allege that Cook acted outrageously towards R.H. when Cook "unnecessarily" brandished his weapon at Buddy and "battered and arrested" his mother, Hupp, in front of him. (*See id.* at ¶¶ 164–65.) Plaintiffs further allege that Cook acted outrageously towards Hupp when Cook battered and arrested Hupp and "encouraged and supported" her prosecution despite there being a lack of probable cause for the prosecution. (*See id.* at ¶¶ 165–66.)

In his motion, Cook argues that he is entitled to judgment as a matter of law on this claim because Hupp cannot establish the elements of an intentional infliction of emotional distress ("outrage") claim. (*See* ECF No. 93 at 24–26.) Specifically, Cook argues that Hupp cannot

establish that Cook's actions were so extreme and outrageous as to exceed the bounds of decency.

(*See id.* at 25–26.)

Under West Virginia law, to establish a claim for intentional infliction of emotional distress or outrage a plaintiff must prove the following:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419, 425 (W. Va. 1998). To be legally outrageous, a defendant's conduct must be "more than unreasonable, unkind or unfair; it must truly offend community notions of acceptable conduct." (*Id.*) "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Tanner v. Rite Aid of W. Va., Inc.*, 461 S.E.2d 149, 157 (W. Va. 1995) (quoting Restatement (Second) of Torts 46(1) (1965)). Whether the complained of conduct is legally outrageous is a question of law to be decided by the trial court." *Hatfield v. Health Mgmt. Associates of W. Va.*, 672 S.E.2d 395, 404 (2008) (explaining that a court evaluating the viability of an outrage claim must "first determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to constitute the intentional or reckless infliction of

emotional distress.    Whether conduct may reasonably be considered outrageous is a legal question, and whether conduct is in fact outrageous is a question for jury determination.").

Here, the complained of conduct falls short of the high standard required for the tort of outrage.    First, Cook's decision to point his service weapon at Buddy in the presence of R.H. cannot be said to have been outrageous as Cook had a right to protect himself from a potentially dangerous animal.    Furthermore, Plaintiffs have not provided, nor has this Court found, any case law stating that this sort of behavior by a law enforcement officer is uncommon, much less outside the realm of decency.

Additionally, Cook's decision to arrest Hupp cannot be said to fall outside the bounds of decency as he was legally authorized to do so.    *See Lowe*, 2009 WL 1393860, at *6 (finding that an officer's decision to arrest an individual, even for a minor offense, is not legally outrageous). Furthermore, this Court found that Cook's use of force in arresting Hupp was reasonable. Therefore, Cook's use of force was also authorized and therefore cannot be said to have been outside the bounds of decency.    *See also supra* Part III.A.1.ii.

Lastly, this Court applying West Virginia law has found on several occasions that outrage claims against law enforcement officers predicated on their conduct during an arrest or other seizure fell short of outrage even if the conduct was otherwise actionable.    *See, e.g.*, *Woods v. Town of Danville, W.V.*, 712 F. Supp. 2d 502 (S.D. W. Va. 2010) (finding that the mistaken arrest of wrong suspect, during which police officer lifted the arrestee off the ground by the chain of his handcuffs was not outrageous); *Lee v. City of S. Charleston*, 668 F. Supp. 2d 763 (S.D. W. Va. 2009) (finding that the public strip search which exposed arrestee's genitals, but only to the arresting officer was not legally outrageous).    Cook's actions here do not even come close to the

20

actions of the officers in the above cited cases and yet the Court found that the officers' conduct in those cases was not outrageous. Thus, even more so here, the Court finds as a matter of law that Cook's actions cannot reasonably be considered outrageous. As Plaintiffs cannot show that Cook's actions can be reasonably considered outrageous, Plaintiffs cannot make out a claim for the tort of outrage. Accordingly, Cook is entitled to judgment as a matter of law on Hupp's and R.H.'s outrage claim.

4. <u>Battery Claim</u>

In Count VIII of the Amended Complaint, Hupp alleges that Cook committed battery when he applied allegedly unjustified and unreasonable force during Hupp's arrest. (*See* ECF No. 33 at ¶¶ 172–78.) In his motion, Cook argues that he is entitled to judgment as a matter of law on this claim because Cook was privileged to use reasonable force in arresting Hupp. (*See* ECF No. 93 at 26.)

Under West Virginia law, a person is liable for battery if: "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." *Tolliver v. The Kroger Co.*, 498 S.E.2d 792, 711 (W. Va. 1997) (quoting Restatement (Second) of Torts § 13 (1965)). However, an activity that would otherwise subject an individual to liability for battery does not constitute battery if the individual is privileged to engage in the conduct. *See Hutchinson v. W. Va. State Police*, 731 F. Supp. 2d 521, 547 (S.D. W. Va. 2010) (citing *Hinojosa v. City of Terrell, Tex.*, 834 F.2d 1223, 1231 (5th Cir. 1988)).

Generally, police officers are entitled to use a reasonable amount of force to take a person being lawfully arrested into custody. *See Lowe*, 2009 WL 1393860, at *4 (quoting *Martin v.*

*Gentile*, 849 F.2d 863, 869 (4th Cir. 1988)). This includes force that is expended to bring a resisting suspect into custody. *See id.* at \*6 (citing *State v. Weisengoff*, 101 S.E. 450, 455–56 (W. Va. 1919) ("Resistance of the sheriff's lawful arrest was unlawful . . . when he refused to submit, it was the officer's right to continue his efforts, using such reasonable force as was necessary to subdue and overcome the [arrestee's] efforts to escape.")).

Here, it is undisputed that Cook used force in arresting Hupp. However, as discussed above, the Court finds that Cook used a necessary and reasonable amount of force in arresting Hupp. *See supra* Part III.A.1.i–ii. As Cook was entitled to use a reasonable amount of force to bring Hupp under his control, his actions were privileged. Therefore, Hupp's battery claim cannot survive. *See Lowe*, 2009 WL 1393860, at \*6; *see also Posey v. Davis*, No. 11-1204, 2012 WL 5857309, at \*5 (W. Va. Nov. 16, 2012) ("[S]ince the law recognizes that police are entitled to use a reasonable amount of force when lawfully seizing a suspect, and the use of force against [p]laintiff was reasonable, the defendants are entitled to summary judgment as to any cause of action for assault and battery"). Accordingly, Cook is entitled to judgment as a matter of law on Hupp's battery claim.

5. Unlawful Search and Seizure Claims

In Counts IX and X of the Amended Complaint, Myers alleges that Cook entered Myers' home without a warrant and unlawfully seized Myers' cellphone in violation of the Fourth and Fourteenth Amendments. (*See* ECF No. 22 at ¶¶ 179–89.) In his motion, Cook argues that exigent circumstances existed that allowed Cook to enter the home without a warrant and seize Myers' cellphone. (*See* ECF No. 93 at 27.) Specifically, Cook contends that he had reason to

believe that the individuals in the residence had video evidence of Hupp's arrest and intended to conceal or destroy it. (*See id.* at 28.)

Under the Fourth Amendment, "searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980). However, there are well established exceptions to this warrant requirement, such as the existence of exigent circumstances. *See Torres v. Com. of Puerto Rico*, 442 U.S. 465, 471 (1979) ("[A] warrant is normally a prerequisite to a search unless exigent circumstances make compliance with this requirement impossible."(internal citation omitted)).

Exigent circumstances "arise when the evidence might be destroyed before a search warrant could be obtained." *United States v. Grissett*, 925 F.2d 776, 778 (4th Cir. 1991) (citing *United States v. Turner*, 650 F.2d 526, 528 (4th Cir. 1981)). The Fourth Circuit has held that police officers need not "produce concrete proof that the occupants of the room were on the verge of destroying evidence; rather, the proper inquiry focuses on what an objective officer could reasonably believe." *Id.* (citing *United States v. Socey*, 846 F.2d 1439, 1446 (D.C. Cir. 1988)). Additionally, the Fourth Circuit has considered the following non-exhaustive list of factors in determining whether exigent circumstances existed:

> (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) the officers' reasonable belief that the contraband is about to be removed or destroyed; (3) the possibility of danger to police guarding the site; (4) information indicating the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband.

*Turner*, 650 F.2d at 528.

With respect to the seizure of cellphones under the exigent circumstances exception, the Fourth Circuit has held that to prevail on the application of this exception, a party must show that

23

(1) the officer had probable cause to believe that phone contained evidence of a crime; and (2) the officer reasonably believed that the evidence would be destroyed or removed before a warrant could be secured. *United States v. Cephas*, 254 F.3d 488, 494 (4th Cir. 2001) (citing *Turner*, 650 F.2d at 528).

Here, while arresting Hupp, Cook heard her husband yelling that he got the incident on video. (*See* ECF No. 92-1 at 29 (Warrant Aff.).) Shortly after this, Hupp's husband retreated to Myers' mobile home and slammed the door. (*See id.*) After placing Hupp in the police vehicle, Cook stepped onto the cinder blocks that served as steps for the home and then proceeded to enter the home. (*See* ECF No. 92-3 at 71–73 (Cook Dep.) ("The trailer door opened out, the screen door. You have to step into the threshold of the trailer, and that was for safety—I was standing on cinder blocks that were uneven and unsteady and it was kind of a big step into the trailer.").) Cook then informed the occupants that he needed the video as it was evidence of the incident. (*See id.*) In response, the occupants were silent and put their heads down. (*Id.* at 73.) Cook then seized two cellphones, one being Myers', and a tablet from the room. (*Id.*) Only after seizing all of the devices and walking away did Hupp's husband inform Cook which cellphone contained the video. (*See id.* at 99.)

Taking into consideration the importance of the video and the occupants' behavior when Cook asked for the video, an objectively reasonable officer could have believed that the video would be concealed or destroyed before a warrant could be obtained. *See United States v. Harris*, 3:15-cr-170, 2016 WL 1441382, at *3–4 (E.D. Va. Apr. 11, 2016) (stating that a police officer had exigent circumstances to search the cellphone of the passenger riding in a vehicle with a suspected drug dealer because the officer reasonably believed that the contents of the phone could be deleted

or destroyed quickly), aff'd, 688 F. App'x. 223 (4th Cir. 2017); *see also United States v. Richardson*, No. 2:13-cr-4, 2013 WL 1503291, at *11 (N.D. W. Va. Apr. 11, 2013). Additionally, Hupp's husband's quick retreat after yelling that he had video of the incident indicates that the possessor of the evidence was aware that Cook was going to ask for the video. Furthermore, it would have been easy for anyone in the home to delete or conceal the video.

In response, Myers argues that an objectively reasonable officer in Cook's position could not have reasonably believed that the video would be concealed or destroyed based on actions or statements that occurred before Cook entered the home. (*See* ECF No. 99 at 26–28.) However, the Court does not find Myers' arguments persuasive. The circumstances indicated a strong possibility that Hupp's friends or relatives, who were in possession of the video might delete or, at the very least, conceal the video before Cook could obtain a warrant as evidenced by the fact that Hupp's husband immediately retreated to the home after yelling that he had gotten the incident on camera. Furthermore, everyone's silence after Cook entered the home and said that he needed the video could reasonably be viewed as indicating that they were not going to be forthcoming about the video. These facts gave rise to an objectively reasonable belief that the video of the incident might be destroyed or concealed. Thus, exigent circumstances justified Cook's warrantless entry and seizure of the cellphone. *See, e.g.*, *United States v. Lewis*, No. 5:15-CR-6, 2015 WL 1884375, at *5 (W.D. Ky. Apr. 24, 2015) (finding that "law enforcement had a reasonable belief that evidence on the cell phone would be destroyed if they did not seize it" when the defendant clearly understood the importance of destroying the evidence). Accordingly, Cook is entitled to judgment as a matter of law on Myers' unreasonable search and seizure claims.

6.      Unlawful Seizure of Buddy Claim

25

In Count XI of the Amended Complaint, Myers alleges that Cook unlawfully seized Buddy when he pointed his gun at, and allegedly planned to shoot, Buddy in violation of the Fourth and Fourteenth Amendments. (*See* ECF No. 33 at ¶¶ 190–96.) In his motion, Cook argues that he did not seize Buddy because Cook did not shoot him. (*See* ECF No. 93 at 29.) Cook further argues that he did not seize Buddy by virtue of pointing his service weapon at Buddy. (*See id.*)

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. CONST. amend. IV. Under Fourth Amendment jurisprudence, privately owned dogs are considered "effects" and are protected by the Fourth Amendment. *See Altman v. City of High Point, N.C.*, 330 F.3d 194, 203–04 (4th Cir. 2003).

"A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 114 (1984). Actions by state officials that have constituted seizure of a dog include the taking of a dog into custody and the shooting of a dog. *See Altman*, 330 F.3d at 204; *see also George v. Vernon*, 2:08-cv-0141, 2011 WL 1137428, at *3 (S.D. W. Va. Mar. 24, 2011).

Here, none of Cook's actions can be said to have meaningfully interfered with Plaintiffs' possessory interest in Buddy. The video of the incident shows Cook pointing his service weapon at Buddy. (*See* ECF No. 95 at 1:25–:29.) Cook does not shoot Buddy nor does Cook take Buddy into his custody. In his response, Myers does not provide, nor has the Court found, any authority that states that the pointing of a service weapon at a dog amounts to seizure of that dog. *Compare* the present case *with Altman*, 330 F.3d at 240; *Mayfield v. Bethards*, 826 F.3d 1252, 1256 (10th Cir. 2016) (finding dog was seized when police officer killed pet dog because the police officer

permanently interfered with the owners' possessory interest); A*ndrews v. City of West Branch, Iowa*, 454 F.3d 914, 918 (8th Cir. 2006) (finding similarly); *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 209–10 (3d Cir. 2001) (finding similarly).   As such, the Court finds that Cook did not seize Buddy.   Accordingly, Cook is entitled to judgment as a matter of law on Myers' unlawful seizure claim.

B.    *Plaintiffs' Partial Motion for Summary Judgment*

In their motion for summary judgment, Plaintiffs' request judgment as a matter of law on Hupp's false arrest and excessive force claims (Counts I and II) and on Myers' unlawful search and seizure claims (Counts IX and X).   (*See* ECF No. 90.)   As discussed more fully above, the Court finds that Cook is entitled to qualified immunity as to Counts I and II.   *See supra* Part III.A.1.i–ii.   Furthermore, the Court finds that Cook's entry into Myers' home and the subsequent seizure of his cell phone were constitutional.   *See supra* Part III.A.5.   Accordingly, the Court **DENIES** Plaintiffs' partial motion for summary judgment.

*IV.    CONCLUSION*

For the reasons discussed herein, the Court **GRANTS** Defendants' motion for summary judgment.   (ECF No. 92.)   The Court further **DENIES** Plaintiffs' partial motion for summary judgment.   (ECF No. 90.)

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      July 3, 2018

_____

THOMAS E. JOHNSTON, CHIEF JUDGE